William H. Schrag, Esq.
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Telephone: (212) 344-5680
Facsimile: (212) 344-6101

*Proposed Attorneys for Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                                      :
                                                                           :        **Chapter 11**
**AGENT PROVOCATEUR, INC.,** *et al.,* [1]          :        **Case No. 17-10987 (MEW)**
                                                                           :        **Joint Administration Requested**
                                                                           :
                               Debtors.                             :
------------------------------------------------------------------x

---

**MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 364
(I) FOR (A) INTERIM AND FINAL AUTHORITY TO CONTINUE USING THEIR
EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS
FORMS; (B) IMPLEMENT CHANGES TO THE CASH MANAGEMENT SYSTEM;
AND (C) CONTINUE UTILIZING PREPETITION FORMS OF PAYMENT; AND (II)
AUTHORIZING AND DIRECTING DEBTORS' FINANCIAL INSTITUTIONS
TO (A) SERVICE DEBTORS' BANK ACCOUNTS; (B) HONOR THE DEBTORS'
ORDER OF PAYMENTS; AND (C) PAY FEES INCURRED WITH
RESPECT TO THE CASH MANAGEMENT SYSTEM**

---

Now come Agent Provocateur, Inc. and its affiliated debtor Agent Provocateur, LLC

(each a "Debtor" and collectively, the "Debtors"), as debtors and debtors in possession in the

within chapter 11 cases, to hereby move (the "Motion") the Court, pursuant to sections 105(a),

363, and 364 of title 11 of the United States Code (the "Bankruptcy Code"), and as authorized by

Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of

---

[1] The Debtors in these two chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Agent Provocateur, Inc. (9441) and Agent Provocateur, LLC (0862).

interim and final orders authorizing the Debtors to utilize their existing cash management system, including utilizing their current bank accounts; (ii) authorizing the Debtors to make changes to the current cash management system as necessary; (iii) authorizing and directing the Debtors' financial institutions to maintain and service their bank accounts, honor the Debtors' order of payments without further authorization from the Court, and debit the Debtors' bank accounts for fees incurred; (iv) authorizing the Debtors to use their existing Business Forms without the designation that they are operating as debtors-in-possession; and (v) authorizing the Debtors to continue utilizing forms of payment utilized in the ordinary course of their prepetition business operations.    In support of this Motion, the Debtors incorporate the declaration of Amanda Brooks (the "Brooks Declaration") filed contemporaneously herewith and respectfully state the following.

## JURISDICTION

1.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated January 31, 2012.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Bankruptcy Code sections 105(a), 363, and 364 provide the statutory bases for the relief requested herein.

## BACKGROUND

2.      On April 11, 2017 (the "Petition Date"), the Debtors commenced the above-captioned cases under the Bankruptcy Code.  Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their affairs as debtors in possession.  The Debtors operate retail shops in New York and other areas of the country selling women's lingerie.  The facts and circumstances giving rise to the filing of these cases are set

forth in the Brooks Declaration.  As of the date hereof, no trustee, examiner or committee has been appointed in these cases.  A request for joint administration of these cases is pending.

## I.    **The Debtors' Cash Management System**

3.    To facilitate the efficient operation of their business, the Debtors utilize an integrated, centralized cash management system (the "Cash Management System") to collect, concentrate, and disburse funds generated by their operations.  The Cash Management System is tailored to meet the Debtors' needs by facilitating the efficient monitoring, forecasting, and reporting that the Debtors utilize as the operators of retail stores in various states around the country.  It is critical to the Debtors' continued operations that the Cash Management System remain intact to ensure uninterrupted collection of revenues and disbursement of payables.

4.    The Cash Management System includes the eighteen bank accounts that are maintained at a store-by-store level (collectively, the "Store Bank Accounts").[2]  Each of the Store Bank Accounts is maintained at Wells Fargo Bank, N.A., or one of its banking subsidiaries ("Wells Fargo").  These Store Bank Accounts are depository in nature only – *i.e.,* the Debtors do not disburse payments to third-parties from these Store Bank Accounts.  The deposits into these accounts come from the sales made at the Debtors' stores.

5.    The Store Bank Accounts are swept on a daily (or near daily) basis into three concentration bank accounts (collectively the "Concentration Bank Accounts," each a "Concentration Bank Account," and collectively with the Store Bank Accounts, the "Bank Accounts").[3]  The Concentration Bank Accounts include an account held at the corporate level by each of the Debtors.  The third Concentration Bank Account is held in the name of L'Agent, a separate brand developed in collaboration with Monica and Penelope Cruz that operates its own

---

[2] A complete list of the Store Bank Accounts is attached hereto as Exhibit A.

[3] A complete list of the Concentration Bank Accounts is attached hereto as Exhibit B.

stores.  The L'Agent brand and stores are owned by Debtor Agent Provocateur, Inc.  All of the Concentration Bank Accounts are maintained at Wells Fargo.

6.      In addition to receiving the funds swept from the Store Bank Accounts, the Concentration Accounts receive payments directly from a concessionary store (*i.e*., a store within a larger department store, in this case, Bloomingdale's).  Funds received from concessions sales are remitted in arrears by the store net of various amounts (*e.g*., rent, salaries of the department store employees) charged by the store.

7.      The Concentration Bank Accounts are utilized for the concentration of funds on a corporate and brand level and the disbursement of such funds for all expenses incurred by such corporation or brand.

8.      As of the Petition Date, the Debtors' Bank Accounts (including the L'Agent account) held approximately $548,583.25.[4]

9.      The Debtors' accounting functions were previously performed by their parent company (the "Parent") from its headquarters in the United Kingdom utilizing Microsoft Dynamic NAV enterprise resource planning software ("Dynamic NAV") and the Wells Fargo business banking platform (the "Wells Fargo Platform").  Those services have since continued with the assistance of a small transition team at the Parent's former headquarters (the "Transition Team").

10.     The Cash Management System contains numerous controls to ensure that only proper disbursements are made.  Invoices for payables are checked against Debtors' own accounting records and, once reconciled, are uploaded to the Wells Fargo Platform for approval by the Transition Team's Financial Controller.  Once approved on the Wells Fargo Platform,

---

[4] The reported figure is the sum of the three Concentration Bank Accounts as of the end of the day on April 10, 2017.

checks are issued and sent to creditors. The account statements for the Consolidation Bank Accounts are uploaded to Dynamic NAV on a daily basis and deposits and disbursements are reconciled against the Debtors' own business records to ensure accuracy of disbursements (and deposits).

11.    The Transition Team also tracks and reconciles all intercompany receivables/payables between the Debtors and the former Parent and the Parent's successor. All of the inventory sold in the Debtors' stores was provided by the Parent and held and offered for sale by the Debtors on a consignment basis. The Debtors were then invoiced for the goods sold on a cost-of-goods basis. Previously, the Parent's invoices were paid from the respective Concentration Bank Account through wire, ACH or other electronic payment. Through this aspect of the Cash Management System, it is ensured the Debtors are only charged for the goods they sold.

12.    Wells Fargo and the companies/banks that process the Debtors' credit and debit card receivables charge periodic service charges and other fees (the "Bank Fees") in connection with the services provided to the Debtors as part of the Cash Management System. The Debtors pay Bank Fees associated with their Bank Accounts in arrears through an automatic deduction from the Bank Accounts. The Bank Fees associated with the processing of credit and debit card transactions are netted prior to the remittance of the transaction amount to the Debtors.

## II.    The Debtors' Existing Business Forms and Checks.

13.    In the ordinary course  of their business, the Debtors use a variety of preprinted business forms that include the Debtors' respective names. Collectively, the business forms used by the Debtors are referred to herein as the "Business Forms."

**RELIEF REQUESTED**

14.    The Debtors request interim and final authority, pursuant to sections 105(a), 363, and 364 of title 11 of the United States Code (the "Bankruptcy Code"), to: (i) continue the use of their existing Cash Management System, including without limitation the continued use and maintenance of their existing bank accounts; and (ii) implement changes to their Cash Management System as may become necessary in the ordinary course of their businesses, including without limitation opening new or closing existing bank accounts.

15.    Also in connection with their request to maintain and use the Cash Management System, the Debtors request that the Court, pursuant to sections 105(a) and 363 of the Bankruptcy Code, authorize and direct, on an interim and final basis, financial institutions at which the Debtors maintain their various bank accounts to: (i) continue to maintain, service, and administer the Debtors' bank accounts; (ii) debit the bank accounts in the ordinary course of business, to the extent the Debtors have sufficient funds standing to their credit any such bank, on account of (a) wire transfers or checks drawn on the bank accounts, provided that any payments drawn, issued or made prior to the Petition Date shall not be honored absent direction of the Debtors and a separate order of this Court authorizing such prepetition payment, or (b) undisputed Bank Fees, if any; and (iii) rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to the Court's order on this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

16.    Also in connection with their request to maintain and use the Cash Management System, the Debtors request that the Court, pursuant to sections 105(a) and 363 of the Bankruptcy Code, authorize and direct, on an interim and final basis, financial institutions that process and remit the Debtors' credit and debit card receivables to transfer all credit card

receivables payable to the Debtors, whether arising before or after the Petition Date, net of any pre- or post-petition service charges or fees to which they are entitled under their contractual agreements with the Debtors.

17.    The Debtors further request interim and final authority, pursuant to section 105(a) of the Bankruptcy code, to continue using existing Business Forms without the designation that the Debtors are operating as debtors-in-possession.

18.    The Debtors further request interim and final authority, pursuant to section 105(a) of the Bankruptcy code, to continue utilizing any form of payment utilized in the ordinary course of their prepetition business operations or that is customary at any time within the Debtors' industry, including the use of debit, wire, and ACH payments.

19.    Proposed orders granting the requested relief on an interim basis (the "Proposed Interim Order") and, pending a final hearing on the requested relief, on a final basis (the "Proposed Final Order") are appended hereto as <u>Appendix A</u> and <u>Appendix B</u>, respectively.

<u>**BASIS FOR REQUESTED RELIEF**</u>

**I.    The continued use of the Debtors' Cash Management System, including the continued use of prepetition Bank Accounts, is in the best interests of the Debtors and the bankruptcy estate.**

20.    Requests for authority to continue use of existing cash management systems and bank accounts are routine and should be freely granted. *Matter of Baldwin United*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).   The use of an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash. *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992).

21.    The Debtors' Cash Management System, including the use of the Bank Accounts, constitutes an ordinary course and essential business practice of the Debtors.   The Cash

7

Management System efficiently and effectively (i) controls corporate funds, (ii) ensures the maximum availability of funds when and where such funds necessary, (iii) reduces costs and administrative expenses by facilitating the movement of funds and timely and accurate account information; and (iv) promotes the Debtors' tracking of financials.  The Debtors have utilized the Cash Management System for years and their key employees are familiar with the system.

22.    Unless otherwise ordered by the Court, the chapter 11 guidelines established by the Office of the United States Trustee for the Southern District of New York (the "Guidelines") require a debtor to, among other things, (i) close all existing bank accounts and open new debtor-in-possession bank accounts; (ii) establish separate debtor-in-possession accounts for (a) paying amounts due in the course of administering the chapter 11 case, (b) the escrow and payment of certain taxes, including payroll and sales taxes, and (c) payroll obligations; (iii) maintain a separate debtor-in-possession account for cash collateral in accordance with 11 U.S.C. § 363(c)(4); and (iv) obtain checks that (a) bear the designation "debtor in possession," (b) identify the bankruptcy case number; and (c) identify the operating account associated with the particular check.  The Guidelines are designed to provide a clear line of demarcation between prepetition and post-petition payments, protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the petition date, and provide notice to those parties doing business with debtors-in-possession that such debtors are under the protection of the bankruptcy court.

23.    Strict enforcement of the Guidelines in the above-captioned bankruptcy cases would disrupt the ordinary financial operations of the Debtors at this early and critical stage of the proceedings.  Any such disruption would reduce the efficiencies provided by the Cash Management System and cause unnecessary expense.

24.    The Debtors' continued use of the Cash Management System, including the use the various existing Bank Accounts, is authorized by section 363(c)(1) of the Bankruptcy Code, which authorizes debtors-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The purpose of that section is to, "strike a balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets."  *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (citation omitted).  *See also Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997) ("The Bankruptcy Code is designed to allow a trustee or debtor-in-possession the flexibility to engage in ordinary transactions without unneeded oversight by the creditors or the court, while at the same time giving creditors an opportunity to be heard to contest those transactions that are not ordinary."). Included within section 363(c) is a debtor's ability to continue "routine transactions" necessitated by a Cash Management System.  *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

25.    To the extent the Debtors' continued use of their Cash Management System is deemed outside the ordinary course of its business, the Court may grant the Debtors the requested relief pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).  That provision codifies the equitable powers of the bankruptcy court.

*Scrivner v. Mashburn (In re Scrivner)*, 535 F.3d 1258, 1262-63 (10th Cir. 2008).  "It is within the Court's equitable power under Section 105(a) to approve the continued use [sic] Cash Management System." *In re Cent. Ken. Crude, L.L.C.*, No. 09-13798, 2009 Bankr. LEXIS 5446, *7 (Bankr. D. Kan. Dec. 3, 2009).  *See also In re Crabtree & Evelyn, Ltd.*, No. 09-14267, 2009 Bankr. LEXIS 4695, *3 (Bankr. S.D.N.Y. July 2, 2009) (authorizing debtor's continued use of cash management system pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code); and *In re General Growth Properties, Inc.*, 412 B.R. 609, 610-11 (Bankr. S.D.N.Y. 2009) (same).

26.     The relief requested herein constitutes the sound exercise of the Debtors' business judgment and is necessary to avoid immediate harm to the Debtors' estates.  Continuing the Debtors' Cash Management System without interruption is important to their business operations.  Permitting the Debtors to continue utilizing their current Bank Accounts will avoid unnecessary disruption and delays in the Debtors' disbursement obligations.  Absent the requested relief, among other things, the Debtors will be forced to close the twenty-one separate but interconnected Bank Accounts, open up new accounts with new account numbers and checks, redistribute account numbers to third-parties, including the credit card companies, redirect payments to the new accounts, and replicate the current system to continue to take advantage of the efficiencies and information gathered by the current system.  During this time, the Debtors deposits and disbursements will be delayed.  For these reasons, the requested relief is justified under sections 105(a) and 363(b) (among others) of the Bankruptcy Code.

27.     Courts within the Second Circuit (and across the country) routinely waive the Guidelines addressed herein and allow debtors to continue the use of their existing cash management systems and bank accounts in the ordinary course of the debtor's business.  *See, e.g.*

*In re Chassix Holdings, Inc.*, Case No. 15-10578 (MEW), Dkt. 69, 267 (Bankr. S.D.N.Y. April 13, 2015); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC), Dkt. 52, 184, 315 (Bankr. S.D.N.Y. Sept. 10, 2015).

28.    Preserving business continuity and avoiding the unnecessary disruption that would be caused by strict adherence to the Guidelines is in the best interest of the Debtors' bankruptcy estates.

## II.    The Debtors' continued use of existing Business Forms is warranted.

29.    The Debtors continued use of their existing Business Forms, substantially in the forms that existed before the Petition Date, will minimize expenses and avoid unnecessary confusion.  The Debtors' creditors will be alerted to their status as debtors-in-possession through notice in these bankruptcy proceedings.  Thus, the printing of new letterhead, invoices, and other business forms is not necessary to provide notice to the recipients of those forms and will only result in expenses and delays from the revision and reordering of the same.  Moreover, the Debtors' customers, the vast majority of whom are unlikely to be familiar with the bankruptcy process or the meaning of "debtor-in-possession," may make a number of incorrect assumptions about purchasing goods from a company that is operating as a debtor-in-possession.  This impact would likely have an adverse impact on the Debtors' sales.

30.    Courts within this district routinely permit debtors to use their prepetition business forms, including checks, without the "debtor-in-possession" label.  *See, e.g., In re Avaya, Inc.*, 17-10089, Dkt. 341 (Bankr. S.D.N.Y. March 31, 2017); *In re Aeropostale, Inc.*, 16-11275, Dkt. 238 (Bankr. S.D.N.Y. June 3, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835, Dkt. 315 (Bankr. S.D.N.Y. Sept. 10, 2015).[5]  Like those cases, such relief is warranted here.

---

[5] Because of the voluminous nature of these orders, such orders have not been attached to this Motion.  Copies of the orders are available upon request to the Debtors' proposed counsel.

### III.   The Debtors' continued use of debit, wire and ACH payments is warranted.

31.     Due to the nature of the Debtors' business operations, the Debtors need to conduct transactions by debit, wire, ACH payments and/or other similar methods of payment.   The Guidelines, however, prohibit disbursements of estate funds by methods other than by numbered check.   The inability to utilize debit, wire, ACH payments and similar methods of payment currently used in the ordinary course of the Debtors' business will likely result in unnecessary disruption of the Debtors' business operations, including an alteration of the Debtors' current system for managing payments.   Furthermore, Debtors' business operations moving forward would be less efficient without these now typical forms of payment.

32.     Like the other relief requested herein, the Debtors' requested relief is fairly routine and has been previously granted by courts within this district.   *See, e.g., In re Avaya, Inc.*, 17-10089, Dkt. 341 (Bankr. S.D.N.Y. March 31, 2017); *In re Aeropostale, Inc.*, 16-11275, Dkt. 238 (Bankr. S.D.N.Y. June 3, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835, Dkt. 315 (Bankr. S.D.N.Y. Sept. 10, 2015).[6]   Again, like in those cases, such relief if warranted here.

### VI.   Bankruptcy Rule 6003 is satisfied.

33.     Bankruptcy Rule 6003 empowers the Court to grant the relief requested herein within twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."   Fed. R. Bankr. P. 6003(b).   "Immediate and irreparable harm" exists where the absence of relief would impair the debtor's ability to reorganize and/or threaten the debtor's future as a going concern.   *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

---

[6] Because of the voluminous nature of these orders, such orders have not been attached to this Motion.  Copies of the orders are available upon request to the Debtors' proposed counsel.

34.    For all of the reasons set forth above, the Debtors require immediate relief to continue the use of their Cash Management System. Without such relief, Debtors will suffer harm. The requirements of Bankruptcy Rule 6003 are satisfied here.

## RESERVATION OF RIGHTS

35.    Nothing contained herein should be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any other person's right to dispute any claim or a waiver of any defense with respect to the same; or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief requested herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' right to dispute such claim.

## REQUEST FOR RELIEF UNDER BANKRUPTCY RULE 6004

36.    To implement the foregoing successfully, the Debtors request that the Court enter an order waiving the notice requirements under Bankruptcy Rule 6004(a), or alternatively that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a), and that the Debtors have established cause to exclude the relief requested herein from the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies here.

## NOTICE

37.    Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 2; (ii) all parties registered to receive notice via the Court's ECF system and all parties who have requested notice of pleadings and filings in these cases; (iii) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the Southern District of New York;

and (vi) each bank at which any Store Bank Account and/or Concentration Bank Account is maintained.    The Debtors submit that such notice is appropriate and sufficient under the circumstances and they request that any Order approving this Motion so provide.

## NO PRIOR REQUEST

38.    The Debtors have not previously requested the relief sought herein from this Court or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order and Final Order, substantially in the forms attached hereto as Appendix A and Appendix B, (i) authorizing, but not requiring, the Debtors to utilize their existing Cash Management System, including maintaining and utilizing their current Bank Accounts; (ii) authorizing the Debtors to make changes to the current Cash Management System as they deem necessary in the ordinary course of operating their business; (iii) authorizing and directing the Debtors' financial institutions to maintain and service their bank accounts, honor the Debtors' order of payments without further authorization from the Court, and debit the accounts for fees incurred; (iv) authorizing the Debtors to use their existing Business Forms without the designation that the Debtors are operating as debtors-in-possession; (v) authorizing the Debtors to continue utilizing any form of payment utilized in the ordinary course of their prepetition operations, including the use of debit, wire, and ACH payments and (vi) granting the Debtors such other and further relief as is just and proper.

Dated:  April 12, 2017
New York, New York

Respectfully submitted,

**THOMPSON HINE LLP**

By: /s/   William H. Schrag                        _
        William H. Schrag
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Telephone: (212) 344-5680
Facsimile:  (212) 344-6101
Email:  William.Schrag@ThompsonHine.com

-and-

Alan R. Lepene
*Pro Hac Admission Pending*
Andrew L. Turscak, Jr.
*Pro Hac Admission Pending*
James J. Henderson
*Pro Hac Admission Pending*
3900 Key Center, 127 Public Square
Cleveland, OH 44114
Phone: 216-566-5500
Fax:  216-566-5800
Alan.Lepene@ThompsonHine.com
Andrew.Turscak@ThompsonHine.com
James.Henderson@ThompsonHine.com

*Proposed Attorneys for the Debtors*

## Exhibit A

### List of Store Bank Accounts

| Account Number | Bank Name | Account Name |
|:---:|:---:|:---:|
| ******9964 | Wells Fargo | AP Atlanta Phipps |
| ******1796 | Wells Fargo | AP Dallas North Park |
| ******6935 | Wells Fargo | AP Las Vegas Palazzo |
| ******6943 | Wells Fargo | LA NY Elizabeth St. |
| ******0450 | Wells Fargo | AP Manhasset Americana |
| ******0468 | Wells Fargo | AP Short Hills |
| ******1596 | Wells Fargo | AP LA Melrose |
| ******1604 | Wells Fargo | AP NY Mercer |
| ******1612 | Wells Fargo | AP San Francisco Geary |
| ******1620 | Wells Fargo | AP Miami Bal Harbour |
| ******4686 | Wells Fargo | AP Boston Newbury |
| ******4694 | Wells Fargo | AP Chicago Oak Street |
| ******9040 | Wells Fargo | AP NY Madison |
| ******9057 | Wells Fargo | AP LA Rodeo |
| ******8431 | Wells Fargo | AP Miami Coral Gables |

# Exhibit B

### List of Concentration Bank Accounts

| Account Number | Bank Name | Account Name |
|:---:|:---:|:---:|
| ******3949 | Wells Fargo | AP Las Vegas Forum[1] |
| ******4473 | Wells Fargo | AP Inc. - Main |
| ******7083 | Wells Fargo | LA Main |

---

[1] This account is the Consolidated Bank Account for Debtor Agent Provocateur, LLC.

# **Appendix A**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re                                                :
                                                     :        **Chapter 11**
**AGENT PROVOCATEUR, INC.,**  *et al.,*              :        **Case No. 17-10987 (MEW)**
                                                     :        **Jointly Administered**
                                                     :
                        Debtors.                     :

------------------------------------------------------------------x

---

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 364 (I)
AUTHORIZING THE DEBTORS  TO (A) CONTINUE USING THEIR EXISTING
CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS; (B)
IMPLEMENT CHANGES TO THE CASH MANAGEMENT SYSTEM; AND (C)
CONTINUE UTILIZING PREPETITION FORMS OF PAYMENT; (II) AUTHORIZING
AND DIRECTING DEBTORS' FINANCIAL INSTITUTIONS TO (A) SERVICE
DEBTORS' BANK ACCOUNTS; (B) HONOR THE DEBTORS' ORDER OF
PAYMENTS; AND (C) PAY FEES INCURRED WITH RESPECT TO THE
CASH MANAGEMENT SYSTEM; AND (III) SETTING A FINAL HEARING**

---

Upon consideration of the motion (the "Motion") of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105(a), 363, and 364 of

the Bankruptcy Code,[1] for an interim order (i) authorizing the Debtors to utilize their existing

Cash Management System, including maintaining and utilizing their current Bank Accounts; (ii)

authorizing the Debtors to make changes to the current Cash Management System in the ordinary

course of operating their business; (iii) authorizing and directing the Debtors' financial

institutions to maintain and service their bank accounts, honor the Debtors' order of payments

without further authorization from the Court, and debit the Debtors' bank accounts for fees

incurred; (iv) authorizing the Debtors to use their existing Business Forms without the

designation that the Debtors are operating as debtors-in-possession; and (v) authorizing the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Debtors to continue utilizing any form of payment utilized in the ordinary course of their prepetition business operations, including the use of debit, wire, and ACH payments, all as more fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant 28 U.S.C § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion being sufficient under the circumstances; and it appearing that no other or further notice need be provided; and upon the Declaration of Amanda Brooks filed contemporaneously with the Motion; and the Court having found and determined that the relief requested by the Motion and granted herein is necessary to avoid immediate harm to the Debtors and their bankruptcy estates as contemplated by Bankruptcy Rule 6003; and the Court having further found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

3.      The requirements of Bankruptcy Rule 6004 are waived and/or have otherwise been satisfied.

4.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2017, at ___:___ __m, prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern

Time, on _____, 2017, and shall be served on: (i) proposed counsel to the Debtors; (ii) the U.S. Trustee; (iii) counsel to any official committee appointed in the above-captioned chapter 11 cases; (iv) each Bank identified on Exhibits A and B of the Motion; and (v) any other Bank or party-in-interest that has appeared in the above-captioned chapter 11 proceedings. In the event that no objections to entry of the Final Order on the Motion are timely received, rhe Court may enter such Final Order without holding the Final Hearing.

5.      The Debtors are hereby authorized, but not directed, pursuant to sections 105(a), 363 and 364 of the Bankruptcy Code, to continue using their Cash Management System, as more fully described in the Motion, including the collection, concentration and disbursement of cash in accordance therewith.

6.      The Debtors are further authorized, but not directed, pursuant to sections 105(a), 363 and 364 of the Bankruptcy Code, to implement any changes to the Cash Management System in the ordinary course of business, including, without limitation, the opening of any new bank accounts or the closing of any of the existing Bank Accounts (as defined herein) as they many deem necessary and appropriate in their sole discretion, provided that (i) any new account is with a bank that meets the Guidelines set forth by the Office of the United States Trustee for the Southern District of New York; and (ii) the Debtors provide notice to the U.S. Trustee of the opening of any new bank account.

7.      The relief, rights, and responsibilities provided herein shall be deemed to apply to any all bank accounts maintained by the Debtors (collectively, the "Bank Accounts" and each a "Bank Account"), regardless of whether such bank accounts are (i) identified on Exhibits A and B to the Motion; or (ii) existing and open at the time of the entry of this Interim Order.

8.      The Debtors are further authorized to (i) continue to use, with the same account numbers and account holder names, all of the Bank Accounts in existence at the time of the Petition Date, regardless of whether such bank accounts are identified on Exhibits A and B to the Motion; (ii) treat such Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (iii) use, in their present form, all (a) correspondence, (b) business forms, and (c) checks and other documents related to the Bank Accounts, without reference to the Debtors' status as debtors-in-possession.

9.      Except as otherwise provided in this Interim Order, all banks at which the Bank Accounts are maintained (collectively, the "Banks" and each a "Bank") are authorized and directed to continue to service and maintain the Bank Accounts as accounts of the Debtors as debtors-in-possession, without interruption and in the ordinary course business, and to receive, honor, and process, including for payment, any and all checks, wires, ACH payments, debits and other forms of payment or draws made by the Debtors and drawn on the Bank Accounts after the Petition Date; provided, however, that the Banks (i) are not required to honor or process any payments or draws for which the Debtors do not have sufficient funds standing to their credit at such Bank; and (ii) shall not honor or process any payment issued, drawn or made prior to the Petition Date absent direction of the Debtors and a separate order of this Court authorizing the same.

10.     The Banks are authorized to charge, and the Debtors are authorized to pay and honor, both prepetition and post-petition service and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtors.

11.     Each of the Banks is authorized to rely on the representations of the Debtors, without the need or duty for any further inquiry or order of this Court, as to the appropriateness of any check, wire, ACH payment, debit or other form of payment, whether in electronic or other form, issued, requested or drawn by the Debtors under the authority granted to them by the Bankruptcy Code or any order of this Court.  Any Bank relying on such representations or request of the Debtors shall not be liable to any party for a payment or other draw made from Debtors' Bank Account in conformity with, and based upon, such representation or request.

12.     The Debtors' credit and debit card providers are authorized and directed to transfer all credit card receivables payable to the Debtors, whether arising before or after the Petition Date, net of any pre- or post-petition service charges or fees to which they are entitled under their contractual agreements with the Debtors.

13.     As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on each Bank at which either Debtor has a Bank Account.

14.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

15.     Nothing in the Motion or this Interim Order shall be construed, whether on an interim or final basis, as (i) an admission or adjudication as to the validity of any claim against the Debtors; (ii) a waiver of any right or defense of the Debtors; or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

16.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided, however, that the Court's ultimate

5

disposition of the Motion on a final basis shall not create liability, impair or otherwise affect any action taken in accordance with and pursuant to this Interim Order.

17.     The Debtors are authorized to take any action necessary to carry out this Interim Order.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

19.     This Court shall retain exclusive jurisdiction to hear and decide any and all disputes related to or arising from the implementation, interpretation and enforcement of this Interim Order.

IT IS SO ORDERED.

Dated:   April _____, 2017
          New York, New York
                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

# <u>Appendix B</u>

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                          :
                                                               :        **Chapter 11**
**AGENT PROVOCATEUR, INC.,** *et al.,*                          :        **Case No. 17-10987 (MEW)**
                                                               :        **Jointly Administered**
                                                               :
                        **Debtors.**                            :
----------------------------------------------------------------x

---

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 364 (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE USING THEIR EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS; (B) IMPLEMENT CHANGES TO THE CASH MANAGEMENT SYSTEM; AND (C) CONTINUE UTILIZING PREPETITION FORMS OF PAYMENT; AND (II) AUTHORIZING AND DIRECTING DEBTORS' FINANCIAL INSTITUTIONS TO (A) SERVICE DEBTORS' BANK ACCOUNTS; (B) HONOR THE DEBTORS' ORDER OF PAYMENTS; AND (C) PAY FEES INCURRED WITH RESPECT TO THE CASH MANAGEMENT SYSTEM**

---

Upon consideration of the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105(a), 363, and 364 of the Bankruptcy Code,[1] for a final order (i) authorizing the Debtors to utilize their existing Cash Management System, including maintaining and utilizing their current Bank Accounts; (ii) authorizing the Debtors to make changes to the current Cash Management System in the ordinary course of operating their business; (iii) authorizing and directing the Debtors' financial institutions to maintain and service their bank accounts, honor the Debtors' order of payments without further authorization from the Court, and debit the Debtors' bank accounts for fees incurred; (iv) authorizing the Debtors to use their existing Business Forms without the designation that the Debtors are operating as debtors-in-possession; and (v) authorizing the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Debtors to continue utilizing any form of payment utilized in the ordinary course of their prepetition business operations, including the use of debit, wire, and ACH payments, all as more fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated January 31, 2012 (J. Preska); and consideration of the Motion and the relief requested therein being a core proceeding pursuant 28 U.S.C § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion being sufficient under the circumstances; and it appearing that no other or further notice need be provided; and upon the Declaration of Amanda Brooks filed contemporaneously with the Motion; and the Court having held a hearing to consider the relief requested by the Motion; and the Court having duly considered all arguments made at such hearing and/or by written objection to the Motion filed in the above-captioned bankruptcy proceedings; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on a final basis.

2.     The requirements of Bankruptcy Rule 6004 have been satisfied.

3.     The Debtors are hereby authorized, but not directed, pursuant to sections 105(a), 363 and 364 of the Bankruptcy Code, to continue using their Cash Management System, as more fully described in the Motion, including the collection, concentration and disbursement of cash in accordance therewith.

4.     The Debtors are further authorized, but not directed, pursuant to sections 105(a), 363 and 364 of the Bankruptcy Code, to implement any changes to the Cash Management System in the ordinary course of business, including, without limitation, the opening of any new bank accounts or the closing of any of the existing Bank Accounts (as defined herein) as they many deem necessary and appropriate in their sole discretion, provided that (i) any new account is with a bank that meets the Guidelines set forth by the Office of the United States Trustee for the Southern District of New York; and (ii) the Debtors provide notice to the U.S. Trustee of the opening of any new bank account.

5.     The relief, rights, and responsibilities provided herein shall be deemed to apply to any all bank accounts maintained by the Debtors (collectively, the "Bank Accounts" and each a "Bank Account"), regardless of whether such bank accounts are (i) identified on Exhibits A and B to the Motion; or (ii) existing and open at the time of the entry of this Final Order.

6.     The Debtors are further authorized to (i) continue to use, with the same account numbers and account holder names, all of the Bank Accounts in existence at the time of the Petition Date, regardless of whether such bank accounts are identified on Exhibits A and B to the Motion; (ii) treat such Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (iii) use, in their present form, all (a) correspondence, (b) business forms, and (c) checks and other documents related to the Bank Accounts, without reference to the Debtors' status as debtors-in-possession.

7.     Except as otherwise provided in this Final Order, all banks at which the Bank Accounts are maintained (collectively, the "Banks" and each a "Bank") are authorized and directed to continue to service and maintain the Bank Accounts as accounts of the Debtors as debtors-in-possession, without interruption and in the ordinary course business, and to receive,

honor, and process, including for payment, any and all checks, wires, ACH payments, debits and other forms of payment or draws made by the Debtors and drawn on the Bank Accounts after the Petition Date; provided, however, that the Banks (i) are not required to honor or process any payments or draws for which the Debtors do not have sufficient funds standing to their credit at such Bank; and (ii) shall not honor or process any payment issued, drawn or made prior to the Petition Date absent direction of the Debtors and a separate order of this Court authorizing the same.

8.      The Banks are authorized to charge, and the Debtors are authorized to pay and honor, both prepetition and post-petition service and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtors.

9.      Each of the Banks is authorized to rely on the representations of the Debtors, without the need or duty for any further inquiry or order of this Court, as to the appropriateness of any check, wire, ACH payment, debit or other form of payment, whether in electronic or other form, issued, requested or drawn by the Debtors under the authority granted to them by the Bankruptcy Code or any order of this Court.  Any Bank relying on such representations or request of the Debtors shall not be liable to any party for a payment or other draw made from the Debtors' Bank Account in conformity with, and based upon, such representation or request.

10.     The Debtors' credit and debit card providers are authorized and directed to transfer all credit card receivables payable to the Debtors, whether arising before or after the Petition Date, net of any pre- or post-petition service charges or fees to which they are entitled under their contractual agreements with the Debtors.

4

11.     Nothing in the Motion or this Final Order shall be construed as (i) an admission or adjudication as to the validity of any claim against the Debtors; (ii) a waiver of any right or defense of the Debtors; or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

12.     The entry of this Final Order terminates and replaces the Interim Order previously entered by this Court with respect to the Motion; provided, however, that nothing contained herein, nor the termination and replacement of the Interim Order, creates liability, nor impairs or otherwise affects, any action taken in accordance with and pursuant to the Interim Order prior to the entry of this Final Order.

13.     The Debtors are authorized to take any action necessary to carry out this Final Order.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

15.     This Court shall retain exclusive jurisdiction to hear and decide any and all disputes related to or arising from the implementation, interpretation and enforcement of this Final Order.

IT IS SO ORDERED.


Dated:   April _____, 2017
         New York, New York

                                            _____
                                            UNITED STATES BANKRUPTCY JUDGE