William H. Schrag, Esq.
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York  10017-4611
Telephone:     (212) 344-5680
Facsimile:     (212) 344-6101

*Proposed Attorneys for Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | |
|---|---|
| **In re** | : |
| | :  **Chapter 11** |
| **AGENT PROVOCATEUR, INC.,  *et al.,*[1]** | :  **Case No. 17-10987 (MEW)** |
| | :  **Joint Administration Requested** |
| | : |
| **Debtors.** | : |

-------------------------------------------------------------x

---

**DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363(b), 507(a), 541, 1107(a) AND 1108 AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY PREPETITION WAGES, COMPENSATION AND OTHER EMPLOYEE BENEFITS**

---

Now come Agent Provocateur, Inc. and its affiliated debtor Agent Provocateur, LLC (each a "Debtor" and collectively, the "Debtors"), as debtors and debtors in possession in the within chapter 11 cases, to hereby move the Court, pursuant to sections 105(a), 363(b), 507(a), 541, 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order (a) authorizing, but not directing, the Debtors to pay certain prepetition wages, compensation and other employee benefits; (b) authorizing, but not directing, Debtors to continue the maintenance of all employee benefit programs in the ordinary course; and (c) directing all banks to honor prepetition checks or transfer requests for payment of prepetition

---

[1] The Debtors in these two chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Agent Provocateur, Inc. (9441) and Agent Provocateur, LLC (0862).

employee obligations (the "Motion"). In support of this Motion, the Debtors incorporate the declaration of Amanda Brooks (the "Brooks Declaration") filed contemporaneously herewith and respectfully state the following.

## JURISDICTION

1.     This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Bankruptcy Code sections 105, 363, 507(a), 541, 1107 and 1108 provide the statutory bases for the relief requested herein.

## BACKGROUND

2.     On April 11, 2017 (the "Petition Date"), the Debtors commenced the above-captioned cases under the Bankruptcy Code. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their affairs as debtors in possession. The Debtors operate retail shops in New York and other areas of the country selling women's lingerie. The facts and circumstances giving rise to the filing of these cases are set forth in the Brooks Declaration. As of the date hereof, no trustee, examiner or committee has been appointed in these cases. A request for joint administration of these cases is pending.

## RELIEF REQUESTED

3.     To minimize the personal hardship the Debtors' employees will suffer if prepetition obligations are not paid when due and to maintain workers' morale at this important time, by this Motion, the Debtors request that the Court enter an order under Bankruptcy Code sections 105, 363(b), 507(a), 541, 1107(a) and 1108: (i) authorizing, but not directing, the Debtors to: (a) pay and/or perform, as applicable, prepetition obligations to current employees (collectively, the "Employees"), including accrued prepetition wages, salaries, commissions, and other cash and non-cash compensation claims, including vacation (collectively, the "Employee

Wage Claims"); (b) continue the Debtors' non-working day policies, benefit plans and programs (and to pay all fees and costs in connection therewith, including those that arose prepetition) (collectively, the "Employee Benefit Obligations"), the most significant of which are described in this Motion; (c) reimburse Employees for prepetition expenses Employees have incurred on behalf of the Debtors in the ordinary course of business (the "Employee Expense Obligations"); (d) continue to pay all workers' compensation premiums, pay and/or contest in good faith, all amounts related to workers' compensation claims that arose prepetition (collectively, the "Workers' Compensation Obligations") and all unemployment insurance premiums (including Federal Unemployment Tax Act (FUTA) obligations) and pay or contest in good faith all amounts related to unemployment claims (collectively, the "Unemployment Obligations"); (e) pay all related prepetition withholdings and payroll-related taxes (the "Employer Taxes" and, together with the Employee Wage Claims, the Employee Benefit Obligations the Employee Expense Obligations and the Workers' Compensation Obligations, and Unemployment Obligations, the "Prepetition Employee Obligations") associated with the Employee Wage Claims and the Employee Benefit Obligations; (ii) authorizing and directing the Debtors' banks to receive, process, honor and pay all of the Debtors' prepetition checks and fund transfers on account of any of the Prepetition Employee Obligations; (iii) prohibiting the Debtors' banks from placing any holds on, or attempting to reverse, any pending or automatic transfers on account of the Prepetition Employee Obligations; and (iv) authorizing the Debtors to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

4.      A proposed order granting the relief requested by this Motion is attached hereto as Exhibit A.

## BASIS FOR REQUESTED RELIEF

5.      The Debtors believe it in their best interest and the best interest of their estates to minimize Employee turnover during the course of the bankruptcy.  The Employees' skills, knowledge and understanding of the Debtors' operations and sales practices are essential to the Debtors' businesses.  If the Debtors suffer a substantial decline in their workforce, which is more than likely if the Prepetition Employee Obligations are not honored, it will have a deleterious impact on the Debtors' estates to the detriment of creditors.  Accordingly, the Debtors request authorization to honor the Prepetition Employee Obligations without interruption to encourage Employees to remain employed while the Debtors proceed in bankruptcy.

**A.      Employee Wage Claims**

6.      **Wages and Salary.**  As of the Debtors' most recent headcount, the Debtors employed a total of 100 full-time and 29 part-time Employees at thirty stores.  Of these 129 employees, 98 are hourly and 31 are salaried.  The Employees perform a variety of critical functions.

7.      Prepetition, Debtors contracted with TriNet HR Corporation ("TriNet") for the provision of certain payroll processing and benefit and human resource management services. Under its agreement with TriNet, the Debtors are considered a "co-employer" with TriNet.  More specifically, the Debtors maintain decision-making authority with respect to the hiring, termination, duties, compensation, and day-to-day management of its Employees.  However, a number of functions have historically been handled by TriNet.  Specifically, among other things, TriNet assumed the obligation to (a) ensure timely payroll (and off-cycle or severance) payments

4

are made to Employees from funds the Debtors provide to TriNet; (b) calculate, withhold, collect and transfer all federal, state and local payroll taxes on wages and other deductions; (c) prepare tax reporting (such as W-2s); (d) handle medical, dental, vision, retirement and other benefit enrollment and Employee contributions; (e) maintain employment practices liability insurance ("EPLI") coverage and pays premiums therefor; (f) pay premiums for workers' compensation and unemployment insurance; and (g) oversee human resource data management for tracking aspects of the Employees' relationship with Debtors in the ordinary course of business.

8.      Prior to the Petition Date, TriNet acted to allegedly terminate its agreement with Debtors.[2]  As part of this termination, TriNet paid Employee wages, withholdings, made benefit contributions, and made EPLI, workers' compensation and unemployment premium payments covering the period ending March 31, 2017.  In addition, prepetition, TriNet accepted funds from Debtors to cover these same items for, in Debtors' best estimate, the period from April 1, 2017 to April 5, 2017, but, as of the Petition Date, to Debtors' knowledge, TriNet has not yet remitted the entirety of the sums payable (to Employees, taxing authorities, benefit providers, etc.), which falls due after the Petition Date.

9.      The Debtors are presently engaged in discussions and negotiations with several possible substitutes for TriNet, but, as of the Petition Date, have not yet finalized a contract with a new payroll and benefits administrator.  By this Motion, Debtors seek authority to ensure that the Prepetition Employee Obligations may be honored through such a substitute administrator. Thus, as used throughout this Motion, references to the "Administrator" shall mean either TriNet, or the entity with which Debtors ultimately contract for the provision of the functions described above which TriNet has historically managed, as the context requires.  *See* ¶ 7, *supra*.

---

[2] The Debtors dispute that Trinet's asserted termination was effective or proper, and they reserve all rights with respect thereto.

10.     In the ordinary course of business, the Debtors pay their Employees through the Administrator by transmitting, via wire or ACH transfers, sufficient funds to cover all wage, withholding and benefit outlays no less than 48 hours in advance of each payday.   The Administrator pays Employees outside of Massachusetts on a semi-monthly pay-cycle on the 5th and 20th day of each month, with the payment on the 5th covering the second half of the prior month (16th through month-end) and the payment on the 20th covering the first half of that month (1st through 15th).  Employees in the Debtors' Boston, Massachusetts facility are paid bi-weekly on a Wednesday to Tuesday two-week schedule, with payday occurring every other Friday.

11.     As of the Petition Date, the Debtors' Employees are owed wages, salaries and commissions for work performed from and after March 31, 2017.  As noted above, based on the arrangement reached with TriNet as part of the termination of its contract, the Debtors expect TriNet will furnish Employees with a postpetition paycheck covering the period from April 1, 2017 to April 5, 2017, which the Debtors anticipate will be paid on or shortly after the Petition Date.  Consequently, the Debtors anticipate their total prepetition Employee Wage Obligations, including salaries, wages, commissions and accrued vacation payable to (i) its hourly Employees is in the approximate amount of $124,000; and (ii) its salaried Employees is in the approximate amount of $171,000.  The Debtors do not believe that any one Employee is owed more than $12,850.00 in prepetition wages, salary, or commissions, including severance, sick leave pay, and accrued and unused vacation days.[3]

12.     Additionally, although the Debtors believe all payments to TriNet have cleared the Debtors' accounts, out of an abundance of caution, Debtors seek authorization to ensure any outstanding prepetition transactions that may be due TriNet are honored in the ordinary course of

_____
[3] One Employee may exceed the cap by less than $100 when her vacation hours are included.

6

business and/or can be paid with replacement funds in the event of dishonor.  A dishonor of any

prepetition transfers to TriNet risks TriNet having insufficient funds to pay Employees for the

periods noted above.

13.      **Vacation, Personal, and Sick Time.**  In accordance with the Debtors' prepetition

paid time off policies, Employees are entitled to vacation time, sick leave, and other paid time

off, which generally accrues differently, depending on whether an Employee is full or part-time

and paid on an hourly or annual salary basis.  Generally, full-time hourly Employees may receive

up to 96 hours of paid time off per calendar year.  Vacation time carries over from year to year,

but in no event may it exceed 96 hours for full-time hourly Employees.  Salaried Employees

generally may receive up to 192 hours of paid time off per calendar year.  Similarly, vacation

time for salaried employees carries over from year to year, but may not exceed the maximum of

192 hours.  Finally, certain regional managers may earn up to 240 hours of paid time off per

calendar year, again with a year-over-year carryover allowed.  As of the Petition Date, most

Employees have not used all their allotted vacation hours as of the Petition Date.  Accordingly,

certain Employees have earned, but have not used, vacation days, sick days or other paid time off

days, but would be entitled to such days off in the ordinary course of business.  Overall, Debtors

estimate that a total of $130,000-worth of vacation time was due its Employees as of the Petition

Date.

14.      In addition, upon separation from employment, the Debtors pay (through the

Administrator) all of a terminated Employees' unused, accrued vacation days.  By this Motion,

Debtors seek to continue this policy in its discretion.  To the extent Employees are terminated

post-petition, the bulk of vacation days payable will be entitled to Section 507 priority as it was

mostly accrued in the prior 180 days and is under the $12,850 cap.  If the Debtors signaled any

intent not to honor the payment of these vacation days, it risks losing Employees needed for critical wind-down efforts involved in closing certain retail locations.

15.    By this Motion, Debtors also seek to continue its paid leave policies uninterrupted.  These forms of compensation are usual, customary and necessary if the Debtors are to retain qualified employees to operate their businesses.  Additionally, the Debtors believe that their Employees will use any paid time-off (whether accrued pre- or postpetition) in the ordinary course of business without resulting in any material impact on the Debtors' cash flow beyond the Debtors' normal payroll obligations.

**B.    Employee Benefit Obligations**

16.    Through an arrangement with the Administrator, all full-time Employees have access to several health benefit providers, each of which offers a variety of benefit plans. Overall, Employees have the option to select medical, dental, vision, life, and short and long term disability insurance plans for themselves and their qualified dependents.  While offering these plans to all full-time Employees, the Debtors only contribute to medical and dental plans.

17.    **Health Benefits.**  Through the Administrator, Debtors offer medical and dental plans to which Debtors contribute.  These health insurance plans and programs are designed to assist Debtors' Employees, and the Employees' eligible dependents, in meeting certain financial burdens arising from illness and the costs of other common preventative or diagnostic healthcare needs.

18.    Under the medical plans available through TriNet, for full-time Employees, the Debtors contribute a portion of the cost of the premiums, up to a fixed limit, depending on whether the Employee is hourly or salaried, and whether the Employee is covering him/herself only, him/herself and a spouse, or him/herself and a family.  These limits may be subject to

8

change, depending on the plans available through the Administrator, but the Debtors' expectation is the new plans will not impose greater financial burdens on the Debtors than the plans made available prepetition.

19.    The Debtors estimate accrued and unpaid employer obligations as of the Petition Date for such benefits to be approximately $55,000,[4] and they request authority, but not direction, to pay such claims.  The Debtors further estimate that the monthly obligation for such benefits is approximately $50,000, based on its historic obligations under the TriNet plans.

20.    No one Employee is entitled to receive more than $12,850 in prepetition Employee Benefit Obligations.

21.    **COBRA.**  Furthermore, and for similar reasons, the Debtors seek to continue to perform their obligations under section 4980B of the Internal Revenue Code to administer continuation health coverage ("COBRA") with respect to former employees.  *See* 26 U.S.C. § 4980B.  The Administrator collects COBRA contributions from Debtors' former employees and obtains a monthly service fee from Debtors in connection with the administration of COBRA benefits.  The Debtors believe they have no accrued but unpaid amount due pursuant to COBRA and the monthly COBRA obligation is generally *de minimis*.  However, out of an abundance of caution, the Debtors seek authority, but not direction, to fund COBRA claims that may have arisen prepetition.

22.    **Life, Disability and Accident Insurance.**  In the ordinary course of business, certain life, disability and accident insurance benefits are made available to Employees through providers selected by the Administrator.  The Debtors do not contribute to these plans, but make

---

[4] Approximately $2,500 of this sum includes amounts payable to the City of San Francisco in conjunction with its Health Care Security Ordinance, whereby sums payable to the City are used to cover eligible Employees' health care expenses under City-managed programs.  *See* San Francisco Admin. Code Ch. 14.1 *et seq., available at* *http://library.amlegal.com/nxt/gateway.dll/California/administrative/chapter14sanfranciscohealthcaresecurityo?f=t emplates$fn=default.htm$3.0$vid=amlegal:sanfrancisco_ca$anc=JD_Chapter14.*

these plans available to Employees as part of the overall service fees charged by the Administrator.

23.    **401(k) Benefits.**  In the ordinary course of business, certain 401(k) plan benefits are made available to Employees through the Administrator.  The Debtors do not contribute monetary amounts to the 401(k) plan made available to Employees through the Administrator, but they pay fees to the Administrator.  These fees, in part (and in addition to compensating the Administrator for the various human resource administrative functions identified elsewhere herein), allow the Debtors to make a 401(k) plan available to Employees.  The Debtors seek authority, but not direction, to fund service fees due the Administrator in the Debtors' sole discretion.  Because the Debtors have paid prepetition charges through April 5, 2017, they anticipate any unpaid obligations accrued are minimal.

24.    The Debtors have not yet determined whether the 401(k) plan made available to Employers through the Administrator will continue to be available, but understand that a transfer of accrued benefits to a new plan may be necessary, and which may require transfer fees payable in such event.  The Debtors believe such transfer fees, if any, would accrue postpetition and in the ordinary course of business.  However, out of an abundance of caution, the Debtors seek authority, but not direction, to fund any plan-to-plan transfer fees and related administrative expenses they may be required to incur, should the need arise, to address any pre- or postpetition obligation TriNet may assert is due to ensure the uninterrupted availability of 401(k) benefits for the Employees.

## C.    Employee Expense Obligations

25.    In accordance with established prepetition policies and in the ordinary course of business, the Debtors reimburse certain expenses incurred by Employees for business purposes

(such as pre-approved business travel, etc.) (the "Employee Expenses").  Employees are required to complete expense reports documenting such Employee Expenses on an as-needed basis within a reasonable period after the expense is incurred.  Debtors vet the expense request and, upon confirmation, transmit funds to the local store's bank account for ultimate payment to the Employee.  The Debtors seek authority, but not direction to pay, in their discretion, the Employee Expenses.  As of the Petition Date, the Debtors believe there are no such unpaid Employee Expenses outstanding.  However, it is possible that, as of the Petition Date, certain Employees may have incurred prepetition expenses on behalf of the Debtors for which they have not received a request for reimbursement.  Such reimbursement requests, if any, would be small. By this Motion, the Debtors seek authority to reimburse Employee Expenses, if there are any, incurred prior to the Petition Date in accordance with ordinary business practices.

**D.      Workers' Compensation, EPLI and Unemployment Insurance Obligations**

26.      The Debtors provide workers' compensation benefits and unemployment insurance benefits to all Employees through the arrangement with the Administrator.  In addition, the Debtors pay the Administrator for premiums due for EPLI coverage.  Based on recent historical data, Debtors estimate that in a typical month, they remit $50,000 for workers' compensation premiums and $12,000 for unemployment insurance premiums (state and FUTA). As of the Petition Date, Debtors estimate less than $10,000 may be due for these coverages. With respect to EPLI premiums, these amounts have historically been included as part of the service package offered by TriNet.   As part of TriNet's alleged termination of the contracts with Debtors, TriNet attempted to simultaneously terminate the Debtors' workers' compensation and EPLI coverages as of April 7, 2017.  The Debtors intend to obtain replacement coverage through the Administrator or an independent carrier, which should not involve the payment of any

prepetition amounts.  However, out of an abundance of caution, the Debtors seek authority to pay workers' compensation and EPLI premiums that may relate to a prepetition period, in the event such coverage is deemed necessary or appropriate in the Debtors' business judgment.

27.    Failure to maintain these coverages in the various states in which the Debtors do business could result in administrative or legal proceedings against the Debtors and their officers and directors.  *See, e.g.,* Fla. Stat. §§ 440.05-06.  Moreover, in many instances, these coverages are a requirement of the Debtors' real property leases for retail locations.  By this Motion, the Debtors seek authority to continue paying and/or contesting in good faith, as appropriate in the Debtors' business judgment, amounts related to workers' compensation claims and unemployment claims that arose prior to the Petition Date and to pay outstanding prepetition obligations to the Administrator for workers' compensation premiums, unemployment insurance premiums and EPLI premiums as they become due in the ordinary course of business.

**E.    Employer Taxes and Other Withholding**

28.    In the ordinary course of the Debtors' prepetition business, the Administrator deducts from Debtors' Employees' paychecks (a) payroll taxes and the Employees' portion of FICA and unemployment taxes; (b) Employee contributions for health and disability related benefits; (c) Employee contributions to 401(k) plans; (d) legally ordered deductions such as wage garnishments, child support and tax levies; (e) withheld charitable contributions; and (f) miscellaneous other items (collectively, the "Payroll Deductions").  The Administrator forwards amounts equal to the Payroll Deductions from an account funded by the Debtors to appropriate third-party recipients.  With respect to Employer Taxes, the Debtors' primary obligation concerns FICA remittances.  In a typical month, FICA obligations are less than

$40,000.    As of the Petition Date, the Debtors estimate approximately $11,000 may be outstanding, a portion of which was advanced to TriNet prepetition.

29.    By this Motion, the Debtors request authority to pay pre and postpetition obligations due to the Administrator in the ordinary course of business for the purpose of ensuring timely payment, to the appropriate third parties, of all federal, state, and local withholding taxes, and other amounts that may have accrued pre-petition and that are deducted and withheld from Employees' paychecks, (which withholdings, in most instances, are not property of the Debtors' estates) and any outstanding Employer Taxes.  The Debtors do not believe they have failed to forward appropriate funds to the Administrator to satisfy Payroll Deductions to the appropriate third-party recipients as of the Petition Date, but out of an abundance of caution, by this Motion, the Debtors seek authority to forward any unpaid prepetition Payroll Deductions to the Administrator for remittance to third parties in the ordinary course, if necessary.

**F.    Direction to Banks.**

30.    Finally, the Debtors seek an order authorizing and directing all banks to receive, process, honor and pay any and all checks drawn on the Debtors' accounts related to Prepetition Employee Obligations, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

<u>**BASIS FOR RELIEF REQUESTED**</u>

31.    As a result of the commencement of these chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Debtors will be prohibited from paying or otherwise satisfying the Prepetition Employee Obligations, and the checks, wire transfers and direct deposit transfers issued with respect to the Prepetition Employee Obligations may be dishonored.  To maintain Employee morale at this critical time, and to minimize personal

hardship the Employees and their dependents would suffer if Prepetition Employee Obligations are not paid or honored when due, the Debtors seek authority to honor, in their discretion, Prepetition Employee Obligations.

32.   Pursuant to 11 U.S.C. § 507(a)(4), the Debtors' Employees' claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded unsecured priority status to the extent of $12,850 per employee.  Similarly, Bankruptcy Code Section 507(a)(5) affords priority status to up to $12,850 per employee for contributions to employee benefit plans.

33.   Furthermore, "the trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

34.   In addition:

> "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking an action on making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

11 U.S.C. § 105(a).

35.   Payments on prepetition claims are permitted where the payment of the debt creates "the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately."  *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp.  (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987).

36.   Courts possess "the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (where debtor "cannot survive" absent payment of

certain prepetition claims, doctrine of necessity should be invoked to permit payment);  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

37.    Due to the wide recognition that maintaining employee morale and preventing significant employee turnover is vital to a debtor's reorganization, courts in this District and elsewhere have routinely granted the type of relief sought by the Debtors under this Motion.  *See In re Chateaugay Corp.*, 80 B.R. at 285-89 (under "necessity of payment" doctrine, it is appropriate for bankruptcy court to defer to Debtors' business judgment in permitting payment of certain workers' compensation claims); *In re Ionosphere Clubs, Inc.*, 89 B.R. at 176; *In re Dana Corp., et al.*, Case No. 06-10354 (Bankr. S.D.N.Y. Mar. 3, 2006); *In re Refco Inc., et al.*, Case No. 05-60006 (Bankr. S.D.N.Y. Dec. 29, 2005); (Bankr. S.D.N.Y. Oct. 13, 2005); *In re Movie Gallery, Inc., et al.*, Case No. 07-33849 (Bankr. E.D. Va. Oct. 17, 2007); and *In re Tweeter Home Entertainment Group, Inc., et al.*, Case No. 07-10787 (Bankr. D. Del. Jun. 12, 2007).

38.    The Employees are essential to the success of the Debtors' efforts in these chapter 11 cases.  The cost of replacing and retraining employees will far outweigh the cost of honoring the prepetition employee-related obligations.  Any significant number of Employee departures, or a deterioration in Employee morale, at this time will substantially and adversely impact the Debtors' business.  Although the Debtors expect to close a number of their retail locations within the next week, they submit that retention of the Employees at locations slated to close will be

important for transitioning, reallocating inventory, and otherwise winding down operations at these locations.  Furthermore, in order to aid in a smooth transition into the postpetition period, it is critical that the Debtors continue, in the ordinary course, their personnel policies, programs, and procedures that were in effect prior to the Petition Date.  If the checks issued and fund transfers requested in payment of the Prepetition Employee Obligations are dishonored, or if such accrued obligations are not timely paid postpetition, the Employees will suffer extreme hardship and may be unable to pay their daily living expenses.  Likewise, it would be inequitable to require the Employees to bear personally the business expenses they incurred on behalf of the Debtors with the expectation that they would be reimbursed.

39.     The Debtors have no Employees owed more than $12,850 with respect to wages or salaries, commissions and vacation earned within 180 days prior to the Petition Date that the Debtors seek to pay or otherwise honor.  With respect to accrued but unused vacation time, the Debtor requests authority to allow Employees to use their vacation time, whether accrued prepetition or postpetition, in the ordinary course of business, except to the extent that prepetition policies provided for Employees to be paid for unused vacation days, if any, upon the termination of their employment.

40.     To the limited extent, if any, that certain Employees may be owed in excess of the section 507 cap, payment of the Prepetition Employee Obligations in excess of this cap is justified in this case.  In the event the TriNet payment Debtors expect is not made, only six Employees may have claims that even approach the $12,850 cap, and only when their vacation time is included.  The Debtors do not believe any Employee will exceed the cap, even if TriNet fails to make the payment Debtors expect.  However, out of an abundance of caution, the Debtors seek authority (but not direction) to honor the salary, commissions, and vacation due

16

these Employees, irrespective of the section 507 cap.  The amount by which these claims could conceivably exceed $12,850.00 is *de minimis*, particularly in relation to the Debtors' gross payroll period and the value to the Debtors' sale efforts of honoring all Prepetition Employee Obligations in the ordinary course.  All six of the Employees in question hold salaried managerial positions.  Such Employees are critical to the Debtors' continued operations (where such operations Debtors plan to continue) and transition and wind-down (where such operations Debtors plan to close).  Additionally, the Debtors believe that to the extent, if any, that one or more prepetition claims exceed $12,850, such claims have arisen in the ordinary course of the business and are reasonable in relation to the value of services rendered.

41.      An Order authorizing, but not directing, the Debtors to pay the Prepetition Employee Obligations in accordance with prepetition business practices is in the best interest of the Debtors, the Debtors' creditors, and all parties in interest.  It will enable the Debtors to continue to operate its business in an economic, efficient manner—without disruption.  A significant deterioration in morale among Employees at this critical time undoubtedly would have a devastating impact on the Debtors and their customers, and their ability to maximize the value of the estates for the benefit of all stakeholders.

42.      The Debtors respectfully submit the amounts to be paid pursuant to this Motion are minimal in light of the importance and necessity of preserving the Employees' services and morale and the difficulties and losses the Debtors will suffer if Employees leave.  Further, many of these obligations are not immediate but, rather, will be satisfied over time.  The Debtors also submit that there is ample justification for the belief that even a short delay in such relief to the Employees will hamper operations and damage the estates.  Consequently, it is important for the Debtors to reassure their Employees.

43.     The requested relief also will reduce the administrative burden that otherwise would be imposed in this case.  The wages, salaries, commissions, vacation, sick leave and other employee benefits that the Debtors seek to pay or otherwise honor generally constitute priority claims pursuant to sections 507(a)(4) and (5), which must be paid in full pursuant to section 1129(a)(9) in order for a plan to be confirmed.  Accordingly, payment of such obligations at this time merely affects the timing of such payments in that payments of these obligations will constitute a credit against each Employee's entitlement to a priority claim.

44.     As a precaution, the proposed Order provides that the relief granted therein shall not constitute or be deemed an assumption of any of the employment and service agreements to which the Debtors are a party or any of the Debtors' employee benefit policies, plans, programs, practices and procedures under Bankruptcy Code section 365(a).  In addition, the Debtors have requested, as set forth in Exhibit A, that the relief be provided on an interim basis, allowing parties in interest an opportunity to object (and, if no party objects, that the order become final without further notice, hearing or opportunity to object).

45.     Accordingly, the Debtors submit it is appropriate for the Court to authorize payment of the Prepetition Employee Obligations as requested herein.

## NOTICE

46.     No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases.  Notice of this Motion has been served on (i) the Office of the United States Trustee for Region 2; (ii) all parties registered to receive notice via the Court's ECF system and all parties who have requested notice of pleadings and filings in these cases; (iii) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (iv) the Internal Revenue Service; and (v) the United States Attorney's Office for the Southern District of New York.  The Debtors submit, and they request that any Order approving this Motion provide, that

18

in light of the nature of the relief requested, such notice is sufficient and no other or further notice need be given.

## <u>NO PRIOR REQUEST</u>

47.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtor requests the entry of an Order, substantially in the form of that attached hereto as Exhibit A:  (i) granting the relief requested herein; and (ii) granting such other and further relief as the Court deems just and proper.

Dated:  April 11, 2017
New York, New York

Respectfully submitted,

**THOMPSON HINE LLP**

By: /s/   William H. Schrag
　　　William H. Schrag
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Telephone: (212) 344-5680
Facsimile:  (212) 344-6101
Email:  William.Schrag@ThompsonHine.com

-and-

Alan R. Lepene
*Pro Hac Admission Pending*
Andrew L. Turscak, Jr.
*Pro Hac Admission Pending*
James J. Henderson
*Pro Hac Admission Pending*
3900 Key Center, 127 Public Square
Cleveland, OH 44114
Phone: 216-566-5500
Fax:  216-566-5800
Alan.Lepene@ThompsonHine.com
Andrew.Turscak@ThompsonHine.com
James.Henderson@ThompsonHine.com

*Proposed Attorneys for the Debtors*

**Exhibit A**
**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **AGENT PROVOCATEUR, INC.,** *et al.,* | : | **Case No. 17-10987 (MEW)** |
| | : | **Jointly Administered** |
| | : | |
| Debtors. | : | |

-------------------------------------------------------------x

---

**INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 363(b), 507(a), 541, 1107(a) AND 1108, AUTHORIZING DEBTORS, INTER ALIA, TO PAY  PREPETITION WAGES, COMPENSATION, AND EMPLOYEE BENEFITS**

---

Upon consideration of the motion (the "Motion") of the above captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order under Bankruptcy Code sections 105, 363(b), 507(a), 541, 1107(a) and 1108 authorizing, but not directing, the Debtors to pay prepetition wages, compensation and employee benefits as set forth therein; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding under 28 U.S.C. § 157(b)(2); and notice of the Motion being sufficient under the circumstances; and it appearing that no other or further notice need be provided; capitalized terms used in this Order and not defined herein have the respective meanings given them in the Motion; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.        The Motion is GRANTED as set forth herein.

2.    The Debtors shall be and hereby are authorized to pay (including to any third parties that provide or aid in the monitoring, processing or administration of the Prepetition Employee Obligations), in their sole discretion, the Employee Obligations, including but not limited to Employee Wage Claims, up to the limit set forth in 11 U.S.C. § 507(a)(4), Employee Benefit Obligations, up to the limit set forth in 11 U.S.C. § 507(a)(5), Employee Expense Obligations, Workers' Compensation Obligations, and Employer Taxes, as and when such obligations are due, upon entry of this order.  Upon the entry of a final order, the Debtors are authorized to pay all the Employee Obligations, notwithstanding the limits set forth in 11 U.S.C. §§ 507(a)(4) and 507(a)(5).

3.    The Debtors shall be and hereby are authorized, in their sole discretion, to honor and continue their Employee Benefit Obligations that were in effect as of the Petition Date; provided, however, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Employee Benefit Obligations, including, policies, plans or programs under Bankruptcy Code section 365(a).

4.    The Debtors' banks shall be and hereby are authorized to receive, process, honor and pay all pre and postpetition checks and fund transfers on account of the Employee Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

5.    The Debtors' banks shall be and hereby are prohibited from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Employee Obligations, provided that sufficient funds are on deposit in the applicable accounts to cover such transfers.

6.      The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

7.      The Debtors may pay any withholding, including social security, FICA, federal and state income taxes, garnishments, health care payments, retirement fund withholding and other types of withholding, whether these relate to the period prior to the date of the Debtors' chapter 11 filings or subsequent thereto.   Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this Order.

8.      Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors pursuant to the relief) shall (a) be construed as a request for authority to assume any executory contract under 11 U.S.C. § 365; (b) waive, affect or impair any of the Debtors' rights, claims or defenses, including, but not limited to, those arising from Bankruptcy Code section 365, other applicable law and any agreement; (c) grant third-party beneficiary status or bestow any additional rights on any third party; or (d) be otherwise enforceable by any third party.

9.      Authorizations given to the Debtors in this Order empower but do not direct the Debtors to effectuate the payments specified herein, the Debtors retaining the business judgment to make or not make said payments, and in all instances subject to the condition that funds are available to effect any payment, and in no event shall any person (Debtor, officer, director or otherwise) be personally liable for any amounts authorized for payment herein but not paid.  This paragraph 9 does not apply to the payment of trust fund taxes.

10.     Any objection to the relief requested in the Motion on a permanent basis must (a) be filed in writing with the Court, at One Bowling Green, New York, New York 10004-1408, by 4:00 p.m. (New York time) on the date that is 15 days after the entry of this Interim Order (the "Objection Deadline") and (b) served so as to be actually received by the following parties by the Objection Deadline:  (i) the Office of the United States Trustee, (ii) proposed counsel to the Debtors, Thompson Hine LLP, (iii) counsel for any postpetition lender approved in these cases, and (iv) counsel for any official committee of unsecured creditors appointed in these cases.

11.     If any timely objections are received, a hearing shall be held to consider such objections at the first regularly-scheduled omnibus hearing in this case.  This Order shall remain in effect until such hearing.  If no objections are timely filed and served as set forth herein, this interim Order shall be deemed a final Order with no further notice or opportunity to be heard afforded to any party.

12.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

IT IS SO ORDERED.

Dated: April __, 2017
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE