**Brian K. Farley, Esq.**
**Perkaus & Farley, LLC**
**1343 N. Wells Street**
**Chicago, IL 60610**
**(312) 944-8200**
**bkfarley@gmail.com**

*Hearing Date and Time: May 24, 2017 @10:00 a.m.*
*Related to Docket Nos. 52 and 56*

*Counsel for Creditor/Landlord: STONE STREET PARTNERS, LLC  / G01NG PLACES, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AGENT PROVOCATEUR, INC., et al.,<br><br>Debtors<br>_____ | ) Chapter 11<br>) Case No. 17-10987 (MEW)<br>)<br>) Joint Administration Requested<br>)<br>)<br>)<br>) |

**CHICAGO LANDLORD'S LIMITED OBJECTION TO DEBTOR'S MOTION FOR AUTHORIZATION TO REJECT CERTAIN UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASES RETROACTIVE TO APRIL 28, 2017 AND CROSS-MOTION TO COMPEL PAYMENT OF ADMINISTRATIVE RENT**

The Chicago Landlord[1] by its undersigned counsel, submits this limited objection (the "Objection") to the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (the "Debtors") for authorization to reject certain unexpired nonresidential real property leases retroactive to April 28, 2017 and the Debtors' supplement to the Motion (the "Supplement"), seeking to abandon certain property to their landlords. [D.N. 52 and 56] The Chicago Landlord also respectfully requests that the Court compel the Debtors to promptly pay due and owing post-petition rent and other lease charges. In support of their Objection, the Chicago Landlord states as follows:

**JURISDICTION**

1.     This is a contested matter, pursuant to Bankruptcy Rules 4001(a), 6006(b) and

---

[1] The Chicago Landlord consisting of STONE STREET PARTNERS, LLC and its Property Manager G01NG PLACES, LLC own/manage a property commonly known as 47-49 E. Oak Street located in Chicago, Illinois. This motion mimics and is largely based upon the motion of the Taubman Landlords [D.N. 63] but since the underlying facts are different rather than joining in said motion it seemed more appropriate to file this separate Motion.

9014.

2. Jurisdiction is based upon 28 U.S.C. §1334.

3. This is a core proceeding within the meaning of 28 U.S.C. §157(b).

## BACKGROUND

4. On April 11, 2017 (the "Filing Date"), the Debtors filed their petitions for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code").

5. Since the Filing Date, the Debtors have operated their business and maintained possession of their assets as debtors in possession, pursuant to Bankruptcy Code §§1107 and 1108.

6. Prior to the Filing Date, the Debtors had entered into a lease for non-residential real property limited to commercial use at 47-49 E. Oak Street, Chicago, Illinois (the "Chicago Lease"). The Chicago Lease is for space in a multi-tenant retail building.

7. Since the Filing Date, the Debtors have failed to pay administrative rent pursuant to the Chicago Lease. They have not paid the "base rent" due and owing from April 11, 2017 through April 30, 2017, and have paid no rent for any portion of the month of May.

8. The Debtors recently filed the Motion, seeking authority to reject certain of their commercial leases, including the Chicago Lease. The Motion was filed on April 28, 2017 and is not scheduled to be heard until May 24, 2017, but the Debtors are asking the Court to make April 28, 2017 the effective date of rejection.

9. The Motion provides no compelling basis for the granting of retroactive relief, and in fact acknowledges that the Debtors are and intend to continue behaving as though they have rights to the leased premises. The Debtors have stated in the Motion that "concurrent with the filing of this motion, the debtors are engaged in the process of evaluating the leases to determine if any of them may be 'below market' to such a degree that might warrant an

2

assumption or assignment of one or more of the leases in return to consideration of sufficient value to the estates. *In this regard, the debtors reserve the right to withdraw this motion as to one or more of the leases.*" (*emphasis added.*)

10. The Debtors subsequently filed the Supplement, seeking to abandon to the landlords (again, *nunc pro tunc* to the date of the Motion) certain property that the Debtors describe as estate property of *de minimis* value and define as the "De Minimis Property". However, the Supplement makes no representation that only the Debtors have any interest in the De Minimis Property.

## DISCUSSION

11. The Chicago Landlord hereby reserves any and all rights and claims that it may have relating to the Debtor's anticipated rejection of the Chicago Lease. The Chicago Landlord respectfully submits that there is no basis for *nunc pro tunc* rejection. Rather, the effective date of rejection should be the later of the date that this Court enters an order authorizing rejection, or the date that the Debtors vacate, surrender possession of the leased premises and return all keys to the Chicago Landlords. In addition, the Chicago Landlord submits that any order authorizing abandonment of property to a landlord contain a finding that no person or entity other than the Debtors has an interest in such property and that the landlord is free to dispose of such property without liability to any other party.

12. The Chicago Landlord also seeks the payment of due and unpaid administrative rent for the Chicago Lease. As of the date of this Objection, no administrative rent has been paid for the period from the Filing Date through April 30, 2017, or for any portion of the month of May.

**(a)     *Nunc Pro Tunc* Rejection Is Not Warranted Here**

13. Bankruptcy courts have recognized a right to retroactively reject a lease, but only upon a showing of special circumstances warranting such unusual relief and a balance of

3

the equities between the debtor and the landlord. See In re Jamesway Corp., 179 B.R. 33, 39 (Bankr. S.D.N.Y. 1995) (J. Garrity) (court found the delay in setting a hearing date to authorize rejection was caused by the creditor and so there was a "strong reason" to allow retroactive rejection).

14. No such reason for retroactive rejection exists here. The Chicago Landlord have in no way delayed the filing or consideration of the Motion, and the Debtors delayed the presentment date of their Motion, rather than seeking an expedited (or even ordinary) notice period for the Motion. Moreover, the reason for the longer notice period is clearly indicated in the Motion itself.

15. The Debtors' Motion provides an excellent illustration of why retroactive rejection is improper absent exceptional circumstances which are not present here. The Chicago Landlord cannot take control of the premises or enter into a lease with another party until this Court enters an order authorizing rejection.[2] The circumstances of this case in no way establish a "strong" reason for retroactive rejection, and a balancing of the equities here favors the landlord.

**(b)    The Abandonment of the De Minimis Property**

16. Similarly, while the Chicago Landlord does not generally object to the Debtors' request to abandon the De Minimis Property, the Supplement contains no evidence or representation that the Debtors and only the Debtors (or perhaps only the Debtors and the relevant landlord) have an interest in the De Minimis Property. Landlords are therefore left with the risk that a third party will assert claims against the landlords when they take

---

[2] Similarly, the Chicago Landlord cannot take any action with respect to the De Minimis Property that the Debtors seek to retroactively abandon unless and until the Court enters an order, making the idea of "retroactive" abandonment meaningless.

4

possession of or take steps to dispose of the property that the Debtors seek to abandon.

17.  The Chicago Landlord therefore respectfully requests that (i) the Debtors be required to offer evidence that no other person or entity has an interest in the De Minimis Property, and (ii) any order authorizing abandonment contain language authorizing landlords to dispose of the De Minimis Property remaining on their premises without liability to any other party.

**(c)  The Nonpayment of Administrative Rent**

18.  Pursuant to this Objection, the Chicago Landlord also seeks an order of this Court compelling the Debtors to pay administrative rent. To date, no rent has been paid for the period from the Filing Date forward for the Chicago Lease.

19.  Section 365(d)(3) of the Bankruptcy Code, provides, in relevant part, as follows:

> (3) The trustee shall timely perform all the obligations of the debtor, . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. . . . Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3).

20.  The Debtors' failure to pay rent and other charges pursuant to the Chicago Lease results in a substantial injury to the Chicago Landlord. Injuries of this type were one of the primary reasons for the 1984 amendments to the Bankruptcy Code, which significantly altered the remedies available to the landlord upon a debtor's failure to comply with lease terms. Section 365(d)(3), as noted above, clearly requires the payment of all rent and other charges on an administrative basis through the date of rejection. The plain language of section 365(d)(3) requires a debtor to honor its obligations under its commercial real estate leases, "notwithstanding Section 503(b)(1)" and it is illogical to conclude that landlords lose their right to payment in the amounts provided for under leases merely because a debtor moves to reject

the lease. *Id.*

21. One of the purposes behind this provision, which was added to the Bankruptcy Code in 1984 as part of the "Leasehold Management Bankruptcy Amendments Act of 1983" (P.L. 98-353, Title III, Subtitle C, §361), is clearly indicated by the floor statements of Senator Robert Dole prior to the section's enactment:

> A second and related problem is that . . . the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services - the use of its property, utilities, security, and other services - without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.
>
> The bill would lessen these problems by requiring the trustee to perform all obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

See also, In re Industrial Distribution Services, Inc., 86 B.R. 718, 720 (Bankr. M.D. Fla. 1988); In re Washington Bancorporation, 125 B.R. 328 (Bankr. D.D.C. 1991); In re Rare Coin Galleries of America, Inc., 72 B.R. 415 (Bankr. D. Mass. 1987); In re Cardinal Industries, Inc., 109 B.R. 738, 740-41 (Bankr. S.D. Ohio 1989).

22. Here, the Debtors have paid no rent to the Chicago Landlord since the Filing Date for the Chicago Lease. The amounts due and owing for the period from the Filing Date through May 24, 2017 for the Chicago Lease is $38,405.07. The Chicago Landlord also seeks payment of interest and attorneys' fees and expenses, as provided in the leases and permitted by numerous courts considering the issue.[3]

---

[3] For example, the Court in In re Revco D.S., Inc., 109 B.R. 264 (N.D. Ohio 1989) found that the expenses for attorneys' fees were related to the debtor's rejection of the lease and the landlord's efforts to collect rental obligations that the debtor had failed to pay. Accordingly, the Revco Court awarded attorneys' fees to the landlord in connection with its rejection claim. See also, In re Gillis, 92 B.R. 461 (Bankr. D. Haw. 1988).

23. Moreover, Bankruptcy Courts in the Southern District of New York have consistently held that "stub rent" – the rent for the partial month following the bankruptcy filing – must be calculated on a pro rata basis and paid as an administrative expense. In re Stone Barn Manhattan LLC, 398 B.R. 359 (Bankr. S.D.N.Y. 2008) (Court determined that section 365(d)(3) requires payment of stub rent as an administrative rent claim); In re Ames Dep't Stores, Inc., 306 B.R. 43, 67-70 (Bankr. S.D.N.Y. 2004) (holding that section 365(d)(3) is ambiguous and adopting a pro-ration approach to determine the amount of obligations, rather than a billing date approach to final month's obligations upon rejection of lease); See also, Newman v. McCrory Corp. (In re McCrory Corp.), 210 B.R. 934, 939-40 (S.D.N.Y. 1997) (court adopted "pro-ration" approach for real estate taxes due under lease); In re Goody's Family Clothing, Inc., 392 B.R. 604 (Bankr. D. Del. 2008) (even if section 365(d)(3) does not require immediate payment of stub rent claims, such claims may be entitled to administrative priority whether or not the lease is later assumed).

24. The timing of the payment of an administrative claim is within the discretion of

---

*[continue Footnote 3]* In In re Worth's Stores Corp., (hereinafter "Worth's II"), Case No. 91-42276-BKC-399 (Bankr. E.D.Mo.) (unpublished opinion dated November 21, 1991), the question of payment of attorneys' fees arose in much the same context as it does here – an argument regarding the rejection date and the immediate payment of post-petition rent. The Worth's debtors filed their motion to reject leases on the same date that they filed their voluntary petition, and sought to have the leases rejected as of that date. In the case of virtually every one of the subject leases, the debtors had closed the premises prior to the filing, notified the landlord of the closing and returned the keys. The debtors' motion to reject was not heard for several weeks, at which time the rejection order was entered. In its opinion the Court stated:

> The leases at issue each contained a clause requiring the unsuccessful party in any action brought to enforce the lease to reimburse the prevailing party for its reasonable attorneys' fees. Homart seeks reimbursement for its attorneys' fees incurred post-petition in successfully enforcing the debtor's obligations under the leases. Accordingly, under Section 365(d)(3), Homart is entitled to an administrative expense claim for its reasonable attorneys' fees. Opinion at p. 3.

The Chicago Lease contains specific provisions for the payment of the landlord's attorneys' fees.

7

this Court. The Court in <u>In re Paul Harris Stores, Inc.</u>, 148 B.R. 307 (Bankr. S.D. Ind. 1992) ultimately held that the landlord was entitled to immediate payment of its rent, and other courts have reached similar conclusions. See, e.g., <u>In re Muir Training Technologies</u>, 120 B.R. 154, 157 (Bankr. S.D. Cal. 1990); In re Buyers Club Markets, Inc., 115 B.R. 700 (Bankr. D. Colo. 1990).

25. The relief requested by the Chicago Landlord herein, the immediate payment of the April 2017 "stub rent" and administrative rent and other charges through the date of rejection is particularly important where, as here, the Debtors have effectively acknowledged in their Motion that the request for retroactive rejection is a contrivance designed to avoid the payment of administrative rent without surrendering the ability to market, assume and assign the supposedly rejected leases. The Motion states that "concurrent with the filing of this motion, the debtors are engaged in the process of evaluating the leases to determine if any of them may be 'below market' to such a degree that might warrant an assumption or assignment of one or more of the leases in return to consideration of sufficient value to the estates. *In this regard, the debtors reserve the right to withdraw this motion as to one or more the leases.*" (*emphasis added.*)

26. The Chicago Landlord's account statement showing the administrative amounts due and owing in connection with the Chicago Lease is attached to this Objection as Exhibit 1. The Debtors owe $38,405.07 (and $758.49/day after May 31, 2017) pursuant to the Chicago Lease from the Filing Date through the anticipated hearing date of May 24, 2017. These amounts do not include any attorneys' fees or expenses, interest or late charges.

## CONCLUSION

WHEREFORE, the Chicago Landlord respectfully requests that this Court enter an order (i) authorizing the rejection of the leases included in the Motion as of the later of the date that this Court enters an order authorizing rejection, or the date that the Debtors vacate,

8

surrender possession of the leased premises and return all keys to the Chicago Landlord, (ii) authorizing abandonment and authorizing landlords to dispose of the De Minimis Property remaining on their premises without liability to any other party, (iii) directing the Debtors to pay the administrative amounts due to the Chicago Landlord for the period April 11, 2017 forward, including interest and reasonable attorneys' fees and actual expenses, promptly after entry of the order, and (iv) granting such other relief as the Court deems just and proper.

Dated: May 19, 2017

/s/ Brian K. Farley
Brian K. Farley
PERKAUS & FARLEY
1343 N. Wells St.
Chicago, IL 60610
(312) 944-8200
(312) 944-8227 (fax)
bkfarley@gmail.com

**Counsel for Landlord: G01NG PLACES, LLC (Building Manager) and STONE STREET PARTNERS, LLC ("Property Owner") in relation to 47-49 E. Oak Street, Chicago, Illinois**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of May, 2017, a true and correct copy of the foregoing was served upon all parties receiving CM/ECF noticing.

/s/ Brian K. Farley
Brian K. Farley

9