**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                          :
                                               :        **Chapter 11**
**AGENT PROVOCATEUR, INC.,  et al.,**           :        **Case No. 17-10987**
                                               :        **Jointly Administered**
                                               :
                    Debtors.                   :
-------------------------------------------------------------x

---

## SUPPLEMENTAL DECLARATION OF DEAN R. VOMERO

---

I, Dean R. Vomero, make this supplemental declaration pursuant to 28 U.S.C. § 1746 and state as follows:

1.      I submit this supplement (this "Supplemental Declaration") in further support of my Declaration in Support of the Motion for an Order (I) Approving the Sale of the Debtors Assets; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief (the "First Declaration"), which was submitted on June 11, 2017 (D.E. # 147).  All capitalized terms used in this Supplemental Declaration and not otherwise defined herein shall have the meanings given them in the First Declaration.

2.      I am submitting this Supplemental Declaration in support of the Sale Motion and to provide information regarding what the likely recoveries to creditors would have been in the event of a hypothetical chapter 7 liquidation.  All of the facts set forth herein are based upon my personal knowledge, information supplied to me by persons involved in the operation of the Debtors' business or the administration of the Debtors' chapter 11 cases, and my review of relevant documents and records maintained in the ordinary course of the Debtors' business.  If I were called to testify, I could and would testify competently to the facts set forth herein. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Declaration.

3.      As I discussed in the First Declaration, prior to the Petition Date, the Debtors' businesses rapidly deteriorated immediately following the sale of the Debtors' UK Parent's business, which sale did not include the Debtors' businesses.

4.      Following the sale of the UK Parent's business to Four Marketing, the Debtors were left without the ability to operate their businesses for any appreciable period of time, and they were about to file chapter 7 bankruptcy petitions in this Court.  However, before the petitions were filed, Four Marketing expressed an interest in purchasing certain of the Debtors' operations.  As a result, the Debtors instead filed their chapter 11 petitions and, eventually, the Sale Motion that is before the Court.

5.      What follows is my analysis of what the likely recovery for creditors would have been had the Debtors filed chapter 7 petitions, in contrast to the recovery I anticipate creditors will receive as a result of the proposed sale.

## A.  Chapter 7 Liquidation

6.      My understanding is that in a Chapter 7 case, a debtor's assets are typically liquidated by a chapter 7 trustee, and creditors are then paid from liquidation proceeds that remain after administrative expenses—such as, among other things, trustee and professional fees—are paid.

7.      In this case, had the Debtors filed chapter 7 petitions, there would have been very few assets remaining for a trustee to liquidate.  The assets consisted of FF&E, cash on hand, and the Debtors' leases.  Although there was approximately $2.3 million in cost value of inventory in the Debtors' stores, for the reasons stated in my First Declaration, I do not believe any value would have been realized from a liquidation of the inventory.

8.      For the reasons discussed below, in my judgment, a liquidation of these assets would have resulted in little or no recovery for creditors.

### i.  Furniture, Fixtures and Equipment

9.      As I stated in my First Declaration, I analyzed whether any value might be realized from a liquidation of the FF&E in the Debtors' stores.  For the reasons I explained in the First Declaration, the cost of removing FF&E from the stores likely would have exceeded the amount that could have been recovered.  Even in a best case scenario, liquidation of the FF&E would have produced only a nominal recovery.

### ii.  Cash on Hand

10.     At the time the Debtors would have filed their chapter 7 petitions, there was approximately $572,000 in cash on hand, which would have been depleted for the reasons explained next.

### iii.  Leases

11.     As I discussed in my First Declaration, the Debtors analyzed whether any of the leases proposed to be assumed and assigned to Four Marketing might be "below market."  In addition, the Debtors, through JLL, also analyzed whether leases that were not being assumed and assigned to Four Marketing might generate value for the estate through a marketing process to potentially interested parties.  In doing so, they retained JLL to evaluate those leases as well.

12.     Had a chapter 7 trustee undertaken a similar exercise upon his or her appointment, the trustee would have been required to pay stub rent for the approximately thirty day period required to complete the lease valuation analysis in the amount of approximately $483,000.

13.     Upon completion of the valuation analysis, and based on JLL's conclusions, the trustee would have identified a total of three leases that might have generated some value.  Based

2

upon my review and analysis of the JLL reports, the sale of those leases potentially would have produced a net recovery in the approximate range of $391,000. However, in order to realize that value, the trustee would have been required to undertake a marketing process, one that JLL estimated would have required a marketing period of between six and nine months. I calculate the rental costs the trustee would have incurred in maintaining the three leases for the duration of the marketing period (assuming, for these purposes, a period of 7.5 months) to be approximately $966,044, resulting in a depletion of all cash remaining in the estate before the marketing process could even be completed. A schedule reflecting the foregoing calculations is attached hereto as Exhibit A.

14.    Even if the trustee could have successfully completed a sale or transfer of the three leases in question, the process would have cost the estate in excess of $1.6 million.[1] Moreover, that liquidation scenario must take into account the fact any proceeds would have been offset by an increase of $2 million in the total claims pool for claims arising out of the eight leases that are proposed to be cured as part of the Sale Motion—but that would not have been assumed and assigned and cured in a chapter 7 proceeding.

iv.    Inventory

15.    For the reasons I explained in the First Declaration, I attribute little or no value to the inventory that existed in the stores at the time the Debtors would have filed their chapter 7 petitions. Based on my understanding of the inventory supply arrangement, title to such inventory would likely have been held to reside with Four Marketing, assuming a chapter trustee would have pursued the issue through what I also understand would have been costly litigation.

**B.    Other Advantages of Sale over Liquidation**

16.    As I described in the First Declaration, there are additional benefits associated with the proposed sale that would not have occurred in a chapter 7 liquidation. First, unlike with the proposed sale, where a number of the Debtors' workers will remain employed, a liquidation would have resulted in elimination of these jobs. In addition, obligations to landlords of the Continuing Stores will continue to be satisfied, which will in turn benefit the landlords and the surrounding areas in which the Continuing Stores will continue to operate. Along with the lease assumptions, there will be a corresponding reduction in the claims pool as a result of assumption, assignment, and cure of these lease obligations, dispensing with a number of lease rejection claims that would have been asserted in a chapter 7 proceeding. Finally, the Buyer will release all claims it or any of its affiliates have against the Debtors, resulting in a further reduction of the claims pool.

17.    As I explained in my First Declaration, I anticipate the Debtors will realize approximately $1,839,000 from the sale of their assets to the Buyer, inclusive of the residual cash generated from operations through closing. For the reasons articulated in the previous declaration, I project the recovery for the benefit of unsecured creditors following the sale to be

---

[1] Consisting of stub rent for all stores ($483,000), rent for the three leases to be sold ($966,000), and estimated miscellaneous operating expenses of $200,000. Notably, this figure does not account for costs and fees of the trustee and trustee professionals; nor does it include broker fees and marketing costs. When all of the foregoing is included, the net recovery for unsecured creditors would be zero.

in the neighborhood of $547,000, to be distributed among a smaller claims pool than would have existed in chapter 7.

18.     Based upon all of the foregoing, it is my judgment that the sale to the Buyer is a far superior alternative to a chapter 7 liquidation.  The sale will result in the greatest recovery available under the circumstances, well in excess of any recoveries that might have been obtained in a chapter 7 liquidation, which would have yielded little or no recovery for the Debtors' creditors.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on June 12, 2017, at New York, New York.

*/s/ Dean R. Vomero*
Dean R. Vomero